IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEYCORP,                        §
                                §
              Plaintiff,         §
                                §
V.                              §        No. 3:16-cv-1948-D
                                §
ALLISON HOLLAND, et al.,         §
                                §
              Defendants.        §

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff KeyCorp ("KeyCorp" or "Key") filed a Motion for Sanctions Against Defendant Martin Mbeteni [Dkt. No. 91] (the "Sanctions Motion" or "Motion for Sanctions") under Federal Rule of Civil Procedure 37(b). United States District Judge Sidney A. Fitzwater referred the Sanctions Motion to the undersigned United States magistrate judge for hearing, if necessary, and recommendation or determination pursuant to 28 U.S.C. § 636(b). *See* Dkt. No. 92.

In a November 10, 2016 Memorandum Opinion and Order, the Court granted Plaintiff KeyCorp's Motion for Sanctions Against Defendant Martin Mbeteni [Dkt. No. 91]. *See* Dkt. No. 103. The Court, finding that no other circumstances make an award of expenses unjust, ordered that, under Federal Rule of Civil Procedure 37(b)(2)(C), Defendant Martin Mbeteni's counsel must pay the reasonable expenses, including attorneys' fees, that Plaintiff KeyCorp incurred in preparing and filing the Sanctions Motion. *See* Dkt. No. 103 at 18.

Mbeteni's counsel and KeyCorp's counsel were ordered to confer, but were

-1-

unable to reach an agreement, as to the amount of attorneys' fees and costs to be awarded to KeyCorp. *See* Dkt. No. 125. KeyCorp therefore filed an Application for Attorneys' Fees, *see* Dkt. No. 131 (the "Application"), as the Court directed, *see* Dkt. No. 103 at 18-19. Mbeteni filed a response, *see* Dkt. No. 152, and KeyCorp has filed a reply, *see* Dkt. No. 153.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Plaintiff's Application.

## Background

As the Court previously explained, the Sanctions Motion ultimately arises out of the Court's ruling on KeyCorp's August 24, 2016 Motion for Expedited Discovery and Rule 34 Examination of Computer Systems [Dkt. No. 30] (the "Expedited Discovery Motion") but, more particularly, KeyCorp contended that Mbeteni violated the Court's October 26, 2016 Memorandum Opinion and Order [Dkt. No. 87], which granted in part and denied in part KeyCorp's Motion to Compel Defendant Mbeteni's Responses to Plaintiff's Discovery Requests [Dkt. No. 77] (the "Mbeteni MTC").

Judge Fitzwater ruled on the Expedited Discovery Motion separately as to Defendant Allison Holland, who had agreed to a consent order that Judge Fitzwater entered, *see* Dkt. No. 57; *see also* Dkt. No. 56 at 1 n.1 ("Plaintiff and defendant Allison Holland [] have agreed to a schedule governing expedited discovery and a Rule 34 examination of computer systems. The court will enter an order that applies to Holland after plaintiff and Holland comply with the court's September 6, 2016 order."), and as to Mbeteni, as to whom Judge Fitzwater granted the Expedited Discovery Motion

"based on [KeyCorp's] showing of good cause," Dkt. No. 56 at 1.

In the September 14, 2016 Order as to Defendant Martin Mbeteni, the Court ordered that "Mbeteni has 15 days from the date of this order to respond to plaintiff's written discovery requests already served" and that "Plaintiff may conduct Rule 34 forensic inspections of Mbeteni's computer networks, workstations, devices, and email accounts on notice of seven business days" and that "Mbeteni shall facilitate plaintiff's forensic expert to do the following: A. Image the home computers of Mbeteni; B. Capture all webmail accounts of Mbeteni; and C. Capture all mobile and personal devices of Mbeteni." *Id.* at 1-2.

The Court also previously entered a Stipulated Protective Order (the "SPO") that provides, among other things, that "[i]t governs any document, information, or other thing furnished by any party to any other party"; that "[t]he protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material"; that "[t]he failure to designate any document or information as confidential will not be deemed to waive a later claim as to its confidential nature, or to stop the producing party from designating such information as confidential at a later date in writing and with particularity"; that "[i]nformation designated as Confidential Information or Highly Confidential Attorneys' Eyes Only Information may only be used for purposes of preparation, trial, and appeal of this action"; that "[t]he existence of this

Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things or testimony"; that "[a]ny such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order"; that "[t]he terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"; that "[s]uch information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order"; and that "[n]othing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections." Dkt. No. 13 at 4, 5, 7, 9-10.

The SPO further provides that "[t]he disclosure of privileged or work-product protected documents, electronically stored information or information is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding" and that "[t]his Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d)." *Id.* at 8.

In the Mbeteni MTC, KeyCorp sought an order compelling Mbeteni "to provide complete responses to Key's First Set of Requests for Admission and Interrogatories and First Set of Requests for Production of Documents within seven days of the filing of this Motion in furtherance of the expedited discovery already ordered by the Court" and "to produce all responsive documents and amend his formal responses" and awarding KeyCorp "all expenses, including attorneys' fees and costs, incurred in

connection with this Motion and the related discovery dispute." Dkt. No. 77 at 1. KeyCorp reported that on July 29, 2016, it "propounded the following on Mbeteni: 1) Plaintiff's First Set of Requests for Admission and Interrogatories and 2) Plaintiff's First Set of Requests for Production of Documents." *Id.* at 3-4.

In the Mbeteni MTC, KeyCorp contended that "Mbeteni failed to produce any documents in response to Key's Requests for Production, failed to properly admit or deny a Request for Admission, and failed to verify Answers to Interrogatories. Key's attempts to resolve the dispute with Mbeteni were unsuccessful." *Id.* at 1. More specifically, KeyCorp reported that "Mbeteni produced not a single document to [KeyCorp] and may be improperly withholding documents" and that "Mbeteni failed to admit or deny Request for Admission No. 23, and did not produce a verification of his Answers to Interrogatories." *Id.* at 4. KeyCorp requested that the "Court compel Mbeteni to immediately produce responsive documents, clarify if he is withholding documents from production, admit or deny Request for Admission No. 23, and produce Mbeteni's verification of his Answers to Interrogatories." *Id.* at 3.

Following oral argument on the Mbeteni MTC, the Court ordered, in relevant part, as follows:

> KeyCorp explains that "Mbeteni produced no documents in response to [KeyCorp's] Requests for Production of Documents," "raised no objection nor provided responsive documents to Document Request No. 1," and, "[i]n response to Document Requests Nos. 5, 6, 8, and 11, ... stated that the documents sought are already in [KeyCorp's] possession pursuant to the forensic inspection being performed in this case." Dkt. No. 77 at 5.
>
> Mbeteni responds that he has "agreed to conform his responses and has in fact served those conformed responses on Key Corp and all counsel,

on October 20, 2016 as promised" and therein "indicates that he has no responsive documents in his possession but any responsive documents may be found during the forensic inspection and will be produced in that process." Dkt. No. 82 at 3. According to Mbeteni, he "does not have any responsive documents in his possession, custody or control other than those subject to the current forensic inspection." *Id.* at 5. Mbeteni contends that KeyCorp's motion to compel "should be denied because Mbeteni indicates that he has no responsive documents in his possession but any responsive documents may be found during the forensic inspection and will be produced in that process but this response was not satisfactory to Key on the basis of mere speculation." *Id.*

In reply, KeyCorp asserts that "Mbeteni must comply with his basic obligations to participate in discovery, and yet the way he moves the target around makes it clear that he has not." Dkt. No. 85 at 1.

....

Here, the Court's orders permit KeyCorp to serve document requests and, separately, to engage in forensic inspections. *See* Dkt. No. 56 at 1-2; Dkt. No. 57 at 1, 2. In the face of those orders, neither Holland nor Mbeteni have shown that the discovery sought through the document requests served on each of them is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

But the motivation for these motions to compel is to provide documents in advance of depositions scheduled for the first days of November, in advance of the November 11, 2016 submission date as to KeyCorp's preliminary injunction motion. The Consent Order as to Holland provides that "Holland's counsel shall provide Plaintiff's counsel with any and all objections to production, in writing, within 7 days after the date upon which all such forensic inspection results have been provided to Holland's counsel." Dkt. No. 57 at 3. At oral argument, Holland's counsel and KeyCorp's counsel agreed that final word that data from Holland's iPhone would be inaccessible came down on October 24, 2016. The Court agrees with Holland's counsel that Holland therefore has until October 31, 2016 to comply with the requirements of paragraph 9 of the Consent Order [Dkt. No. 57].

Holland's counsel also affirmed to the Court at oral argument that, as part of counsel's review of "all documents and information imaged and/or captured from Holland's computer networks, workstations, devices, and email accounts," *id.* at 2, Holland's counsel would review those documents and information for responsive to KeyCorp's First Set of Requests for Production of Documents to Holland and would provide KeyCorp with a document production and information as required by Rule 34(b)(2)(E) by October 31, 2016. Mbeteni's counsel likewise affirmed

that she is engaged in the same process and will, within the time frame allowed for her review and objections to the copy of the documents, data, and information that are the results of the searches run by KeyCorp's forensic expert, pursuant to the search protocol attached to KeyCorp's opposition [Dkt. No. 70-6], pursuant to KeyCorp's forensic inspections of Mbeteni's computer networks, workstations, devices, and email accounts.

      Under the circumstances, the Court will, pursuant to Rule 26(b)(1) and 26(b)(2), order Holland and Mbeteni to review the documents and information provided to them by KeyCorp's forensic expert within the time allowed by the relevant order [Dkt. Nos. 57 and 72], subject to any extensions to which KeyCorp agrees, and to provide to KeyCorp the documents and information as required by Rule 34(b)(2)(E) that is responsive to KeyCorp's First Set of Requests for Production of Documents to each defendant, subject to any objections that have been raised and are not overruled in this order, by the deadline provided for objections under the relevant order [Dkt. Nos. 57 and 72].

      Mbeteni and Holland otherwise have ongoing supplementation obligations under Federal Rule of Civil Procedure 26(e)(1) to produce any responsive documents or information within their respective possession, custody, or control, and this order is entered without prejudice to KeyCorp's filing any future motion to compel.

Dkt. No. 87 at 20-24.

According to the Sanctions Motion, "[d]espite Key's numerous good faith attempts to complete discovery in this case, Mbeteni ha[d] refused to comply with his discovery obligations"; "[h]e failed to comply with this Court's Order of October 25, 2016 (Doc. No. 87) which, among other things, compelled Mbeteni's production of documents by no later than October 31, 2016"; "Mbeteni's failure to comply with the Order prevent[ed] Key from moving forward with this case, prevents Key from conducting a meaningful deposition of Mbeteni, and prevent[ed] Key from conducting a meaningful deposition of Defendant Allison Holland"; and "Mbeteni's foot-dragging has increased the cost of this litigation in both dollars and time." Dkt. No. 91 at 3. KeyCorp requested "that this Court impose sanctions against Mbeteni, order

appropriate compliance, and order Mbeteni to pay costs incurred by his noncompliance." *Id.*

According to KeyCorp, the October 26, 2016 Memorandum Opinion and Order [Dkt. No. 87] "provides that, to facilitate his production of documents, Mbeteni would – at his request – complete a review of documents generated through [KeyCorp's] forensic inspection of his computers, electronic devices, and webmail"; "[KeyCorp's] forensic consultant, [Business Intelligence Associates, Inc. ("BIA")], had already made about 14,000 documents available to Mbeteni through a web-based review platform"; "Mbeteni agreed – and the Court ordered – that Mbeteni would finish reviewing the documents by October 31, coding the documents that are responsive and not privileged"; but "Mbeteni did not produce any documents to [KeyCorp] by the October 31, 2016 deadline." *Id.* at 4.

KeyCorp further explained that, "[o]n October 31, 2016, [KeyCorp's] forensic expert, BIA, reported that as of that afternoon Mbeteni had reviewed just 735 of the 14,000 documents hosted in BIA's database"; that, "[l]ater that day, at 8:25 p.m. Eastern Time, Mbeteni communicated to BIA that Mbeteni had located 175 documents to produce and wanted to start making a rolling production"; that, "[l]ater that night, [KeyCorp] advised Mbeteni that Mbeteni had produced no documents in violation of the Court's Order, which was not surprising since Mbeteni had reviewed fewer than 1,000 documents out the 14,000 documents in the database"; and that KeyCorp "advised that it could not and would not depose Mbeteni on Friday, November 4, and had already agreed with Holland to reschedule her deposition (due to Mbeteni's

discovery delay)." *Id.* at 5 (emphasis removed).

According to KeyCorp, "[o]n November 1, 2016, Mbeteni produced Martin Mbeteni's First Rolling Production To [KeyCorp's] Requests For Production ('First Rolling Production'), supplementing his response to Key's Document Request No. 8 only, but produced no documents to Key," and, "[a]ccording to the First Rolling Production, 'The specific documents with their control numbers as listed below shall be turned over to counsel for KeyCorp through KeyCorp's expert, BIA, as soon as BIA can produce them electronically through Relativity. Any future information that is responsive, shall be produced in the next rolling production on the 7th day from this production….'" *Id.* (emphasis removed).

In its November 10, 2016 Memorandum Opinion and Order, the Court,

[a]fter carefully considering the parties submissions in connection with the Sanctions Motion and the undersigned's own familiarity with the proceedings leading up to the orders on the Motion for Protective Order in Favor of Lularoe for U by Ebonie and Jennifer™ or to Modify/limit the Order [Document 56] Scheduled to Be Enforced on October 4, 2016 [Dkt. No. 65], KeyCorp's Motion to Compel Defendant Holland's Responses to Plaintiff's Discovery Requests [Dkt. No. 76], and KeyCorp's Motion to Compel Defendant Mbeteni's Responses to Plaintiff's Discovery Requests [Dkt. No. 77], … determine[d] that Mbeteni has violated the Court's October 26, 2016 Memorandum Opinion and Order [Dkt. No. 87] by failing to complete to fully "review the documents and information provided to them by KeyCorp's forensic expert within the time allowed by the relevant order [Dkt. Nos. 57 and 72], subject to any extensions to which KeyCorp agrees, and to provide to KeyCorp the documents and information as required by Rule 34(b)(2)(E) that is responsive to KeyCorp's First Set of Requests for Production of Documents to" Mbeteni by October 31, 2016. Dkt. No. 87 at 24.

The record does not support Mbeteni's assertion that KeyCorp extended the October 31 deadline, where Mbeteni reports that an agreement to a rolling production beyond that date was apparently reached during the October 25, 2016 oral argument. But no such

agreement was reached during that oral argument, in which KeyCorp's counsel participated only by telephone, and, in any event, the Court's October 26, 2016 Memorandum Opinion and Order [Dkt. No. 87] did not order or authorize Mbeteni to comply beyond October 31, 2016. That order made clear that "the Court's orders permit KeyCorp to serve document requests and, separately, to engage in forensic inspections"; that, "[i]n the face of those orders, neither Holland nor Mbeteni have shown that the discovery sought through the document requests served on each of them is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; and that Mbeteni would be permitted to review and produce, by October 31, from the search results from the forensic image only because "the motivation for these motions to compel is to provide documents in advance of depositions scheduled for the first days of November, in advance of the November 11, 2016 submission date as to KeyCorp's preliminary injunction motion." *Id.* at 22, 23.

Under these circumstances, the Court [found] that Mbeteni violated the Court's October 26, 2016 Memorandum Opinion and Order [Dkt. No. 87], without substantial justification, by failing to fulfill his discovery obligations by October 31 as this Court ordered him to do (and as his counsel committed to doing at the October 25 oral argument) and that Rule 37(b)(2) sanctions that are just and specifically related to the matter at issue in the discovery order are warranted.

The Court further determine[d] that KeyCorp adequately conferred before filing the Sanctions Motion and that further conferring would not have avoided the need for the motion where Mbeteni disagreed that he was out of compliance with the Court's order and would not agree to proposals to extend deadlines and move depositions to avoid the need for filing the motion. And the Court determine[d] that, on this record and under the circumstances, there is no basis for sanctions against KeyCorp. Any unhappiness or frustration that Mbeteni may have at KeyCorp's having sued him, seeking preliminary injunctive relief, and seeking (and having obtained) authorization for expedited discovery have no bearing on what the Court's October 26, 2016 Memorandum Opinion and Order [Dkt. No. 87] required and whether Mbeteni has complied with that discovery order. Neither does KeyCorp's having filed motions to extend certain deadlines. As to Mbeteni's suggestion that KeyCorp should be sanctioned based on the parties' not having conferred on a scheduling proposal, the Court further note[d] that KeyCorp's request to extend the due date for the parties' scheduling proposal has now been granted. *See* Dkt. No. 101.

The Court determine[d] that the least severe sanction adequate to achieve Rule 37(b)(2)'s purposes of reimbursing KeyCorp and deterring

-10-

violations of the Court's discovery orders is to order (1) that Defendant Martin Mbeteni must produce all responsive documents as ordered in the Court's October 26, 2016 Memorandum Opinion and Order [Dkt. No. 87] by no later than **November 21, 2016**, in order to permit depositions of Defendants Martin Mbeteni and Allison Holland by December 14, 2016; (2) that Section 4 of the September 15, 2016 Consent Order Granting Motion for Expedited Discovery & Motion for Rule 34 Examination of Computer Systems as to Defendant Allison Holland [Dkt. No. 57] is amended to provide that the Motion for Preliminary Injunction [Dkt. No. 23] shall be deemed submitted for decision on **December 19, 2016**; and (3), finding that no other circumstances make an award of expenses unjust, that Defendant Martin Mbeteni's counsel must pay the reasonable expenses, including attorneys' fees, that Plaintiff KeyCorp incurred in preparing and filing of its Motion for Sanctions Against Defendant Martin Mbeteni [Dkt. No. 91].

Dkt. No. 103 at 15-18; *see generally Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL 410062, at *1-*4 (N.D. Tex. Jan. 30, 2015) (explaining that, when a district judge refers a motion for sanctions to a magistrate judge, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Federal Rule of Civil Procedure 72(a) or 72(b) applies and that, when the magistrate judge finds that dismissal or another sanction disposing of a claim or defense in unwarranted, the motions should be characterized as non-dispositive and may be ruled on by the magistrate judge) (followed in *Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:11-cv-1885-L-BN, Dkt. No. 373 at 2 (N.D. Tex. Dec. 1, 2016)).

## Legal Standards

The undersigned has authority to enter a nondispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37. *See* Dkt. No. 92; 28 U.S.C. § 636(b); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th

Cir. Unit A 1981) (per curiam).

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; [or] (vi) rendering a default judgment against the disobedient party." FED. R. CIV. P. 37(b)(2)(A)(i)-(vi). Rule 37(b)(2)(C) further requires that, "[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

"This Court uses the 'lodestar' method to calculate attorney's fees." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing *Fender v. Zapata Partnership, Ltd.*, 12 F.3d 480, 487 (5th Cir.1994); *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). That includes attorneys' fees awarded as discovery sanctions under Rule 37. *See Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002).

-12-

The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (*citing Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)). The relevant legal community is the community in which the district court sits. *See Tollett*, 285 F.3d at 368. Generally, the reasonable hourly rate for a community is established through affidavits of other attorneys practicing there. *See id.* But the Court also may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.,* 526 F.2d 865, 868 (5th Cir. 1976); *Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

The party seeking reimbursement of attorneys' fees bears the burden to "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum*, 465 U.S. at 896 n.11, as well as to establish the number of hours expended through the presentation of

adequately recorded time records as evidence, *see Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). A movant seeking attorneys' fees is also "charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment," which "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799 (footnotes omitted).

The Court should use this reported time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See Watkins*, 7 F.3d at 457. The hours remaining are those reasonably expended. *See id.*

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 800. Further, "[i]f a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing. It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015).

And the Court should not "eliminate wholesale the services of attorneys without identifying the particular services which are regarded as duplicative." *Tasby v. Estes*, 651 F.2d 287, 289-90 (5th Cir. Unit A July 1981) (internal quotation marks omitted). "Percentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment" – including by failing to write off time spent on work that was redundant and in hindsight may have been unnecessary – or "when

-14-

a court reduces excessive time spent on particular legal services" or for particular services that are "duplicative." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-752-D, 2011 WL 487754, at *13 (N.D. Tex. Feb. 11, 2011); *Shepherd v. Dallas Cty., Tex.*, No. 3:05-cv-1442-D, 2009 WL 977294, at *2 n.3 (N.D. Tex. Apr. 10, 2009); *accord Saizan*, 448 F.3d at 799 ("The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." (footnote omitted)); *Cookston v. Freeman, Inc.*, No. 3:98-cv-2106-D, 1999 WL 714760, at *5 (N.D. Tex. Sept. 14, 1999).

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards

-15-

in similar cases. *See Johnson*, 448 F.2d at 717-19; *see also Saizan*, 448 F.3d at 800. Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins,* 7 F.3d at 457.

The Court recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, may have been called into question by the Supreme Court's decision in *Perdue v. Kenny A.*, 559 U.S. 542 (2010). *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013). But, the United States Court of Appeals for the Fifth Circuit, without comment or reference to the *Perdue* decision, has continued to utilize the approach laid out by this Court. *See Black v. Settle Pou, P.C.*, 732 F.3d 492, 502-03 (5th Cir. 2013). *But see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663-64 (5th Cir. 2012) (analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 296 (5th Cir. 2014) (following *Pilgrim's Pride*).

And the Fifth Circuit, in a recent published opinion, has rejected the argument "that *Perdue* clearly disfavors applying the *Johnson* factors to determine a fee award and instead requires the use of only the lodestar." *Combs v. City of Huntington, Tex.*,829 F.3d 388, 393 (5th Cir. 2016). The Court of Appeals explained that

> [w]e agree that *Perdue* requires courts to first calculate the lodestar; indeed, this has long been our practice. *See, e.g.*, *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the 'lodestar.'"). But *Perdue* does not, as Combs contends, make

it impermissible to then consider any relevant *Johnson* factors. *Perdue*
cautions against the sole use of the *Johnson* factors to calculate a
reasonable attorney's fee but nowhere calls into question the use of
relevant *Johnson* factors to make this determination. Indeed, *Perdue*
expressly allows adjustments "in those rare circumstances in which the
lodestar does not adequately take into account a factor that may properly
be considered in determining a reasonable fee." 559 U.S. at 554, 130 S.
Ct. 1662. ....

And though the lodestar is presumed reasonable, it may be
adjusted where it "does not adequately take into account a factor that
may be properly considered in determining a reasonable fee." *Perdue*, 559
U.S. at 554, 130 S. Ct. 1662. .... *Perdue*, consistent with the Court's
frequent pronouncements, explains that lodestar enhancements are to be
rare. ....

In sum, the district court should begin by calculating the lodestar:
the reasonable hours expended multiplied by a reasonable rate. The
district court may then determine whether any other considerations
counsel in favor of enhancing or decreasing the lodestar. In light of the
"strong presumption" that the lodestar represents a sufficient fee,
enhancements must necessarily be rare. *Perdue*, 559 U.S. at 553-54, 130
S. Ct. 1662.

*Id.* at 393-95.

*Perdue*, then, did not change the proper method for calculating attorneys' fees

awards in the Fifth Circuit. Accordingly, the analysis below will take into account the

necessary factors when determining the appropriate amount of attorneys' fees to be

awarded under Federal Rule of Civil Procedure 37(b)(2)(C).

## Analysis

I.   Mbeteni's Motion for Reconsideration

As a threshold matter, Mbeteni's response to the Application asks the Court to

reconsider the November 10, 2016 Memorandum Opinion and Order [Dkt. No. 103]

because "there was substantial justification for the inability to complete the review in

accordance with the Order of Court due to the overwhelming pressure of trial

preparation and prescheduled deadlines in other cases as noted by the Magistrate

Judge in December 2016 when counsel for Martin Mbeteni was conducting a trial in

the District Court." Dkt. No. 152 at 2. According to Mbeteni's latest filing

> [a]s at October 25, 2016, counsel for Martin Mbeteni had so many preexisting conflicts on an overwhelming docket of cases, with prescheduled deadlines which made it impossible for counsel to complete the review by October 31st, 2016. Counsel had indicated to the court at the October 24, 2016 hearing that it would be impossible for her to complete the review of all documents by October 31st, 2016 and then requested at least 14 days. The court denied Mbeteni's motion and only allowed 7 days. At the hearing, KeyCorp indicated its willingness to agree to a rolling production but refused to acknowledge this agreement when it filed its motion for sanctions. Despite her best efforts, Counsel was unable to complete the review within the time allotted due to several deadlines, to mention a few:
>
> 1. Preparation for trial set for November 15, 2016, Mandatory full day Mediation on October 14, 2016 in a case set for trial on out of Dallas County,
>
> 2. Drafting of Post Judgment Motion for Reconsideration out of Dallas County Family Court and Notice of Appeal, preparation of designation of records for appeal in September 2016, and Contested Hearing on Motion for Reconsideration and other post Judgment motions heard on October 11, 2016.
>
> 3. Response to Motion for Summary Judgment was due in a case out of Panola County on October 26th, 2016 and hearing was set for November 2nd, 2016
>
> 4. Response to Motion for Summary Judgment was due in a case out of the Delaware Supreme Court in New York on October 20th, 2016 and the hearing was set for October 27th, 2016,
>
> 5. Pretrial materials were due in September 2016 in the case pending before the Northern District of Texas across the hall from the Magistrate Judge's courtroom and the Courtroom of the Honorable Judge Fitzwater which went to trial in the first week of December, 2016.
>
> 6. Various Immigration filings and appearances at proceedings fell within the last 3 months of the year when expedited discovery was ordered.
>
> Counsel for Mbeteni tried desperately to meet all these deadlines and to complete the review but when that was not feasible she commenced a rolling production as she reviewed the documents to try to meet the deadline. To her surprise, KeyCorp denied the agreement to

receive production on a rolling basis and filed the Motion for Sanctions.
Because KeyCorp denied that there was an agreement, the court granted
the motion for sanctions. Due to her onerous docket, post the motion for
sanctions, Counsel for Mbeteni even had to file a Notice of Conflict with
to get the deposition deadline reset. It was at this hearing that the
Magistrate Judge acknowledged the pressure counsel for Mbeteni was
under, and Mbeteni prays that the court recall this pressure and find that
the failure to complete the review was not due to lack of diligence but
that counsel had substantial justification for failure to comply with the
Order to compel. Neither Mbeteni's nor his counsel's conduct were borne
of want of due diligence and the court has the discretion to set aside its
own order upon review of the evidence in hindsight.

*Id.* at 2-3.

The Court finds no basis for reconsideration of its previous determinations in the

November 10, 2016 Memorandum Opinion and Order. These grounds were not

previously raised but could have been and therefore provide no appropriate basis for

reconsideration. And, regardless, the fact that the deposition that the Court was

required to order Mbeteni to sit for had to be rescheduled because Mbeteni's counsel

was in trial before United States District Judge Sam Lindsay on December 14, 2016

– and, more generally, counsel's protestations regarding her workload – do not change

the Court's determination that the ordered sanctions are appropriate under Rule

37(b)(2)(C) or any of the findings and conclusions supporting that determination.

Neither does Mbeteni's again repeating the rejected position that KeyCorp had agreed

during the October 24, 2016 hearing to a rolling production, which, again, in any event,

the Court did not order. *Accord* Dkt. No. 103 at 15-16; Dkt. No. 153 at 1-5.

II.   KeyCorp's Application for Attorneys' Fees

Turning then to the merits of KeyCorp's Application, KeyCorp requests an order

requiring Mbeteni's counsel to pay its reasonably incurred fees and expenses in the amount of $10,385.00. *See* Dkt. No. 131; Dkt. No. 153. This includes "legal fees incurred by Kaufman & Company and forensic consulting expenses incurred by BIA." Dkt. No. 131 at 3.

    A.    KeyCorp's requested fees and expenses

The fees sought consist of work performed by Steven S. Kaufman, a partner in Cleveland, Ohio with Kaufman & Company who has been a practicing trial lawyer and litigator for approximately 40 years with extensive trial and injunction proceeding experience in trade secret lawsuits; Chad D. Cooper, a partner in Cleveland with Kaufman & Company who has been a practicing trial lawyer and litigator for approximately 20 years with significant litigation experience in trade secret lawsuits; Sara Smoter, a junior associate in Cleveland who undertook initial research and drafting of the Sanctions Motion; and Ashtyn Saltz, the principle associate on the matter in Cleveland who engaged in subsequent analysis and drafting. *See id.* at 3-4; Dkt. No. 131-1 at 1-2. According to the Application, "Kaufman & Company's overall staffing of the project directed to obtaining the Court's Order was divided and assigned according to level of experience," where "Chad Cooper directed the drafting and revising, and Steve Kaufman provided the overall direction and guidance." Dkt. No. 131 at 4; Dkt. No. 131-1 at 2.

The reported time is attributable to preparing the Sanctions Motion, reviewing Mbeteni's Opposition to the Motion for Sanctions, preparing the Reply, and reviewing the Court's resulting order. *See id.*; Dkt. No. 131-1 at 2. KeyCorp seeks 2.8 hours at

$175.00 an hour ($490.00) for the work performed by Smoter; 18.4 hours at $205.00 an hour ($3,772.00) for the work performed by Saltz; 11.7 hours at $385.00 an hour ($4,504.50) for the work performed by Cooper; and 1.3 hours at $385.00 an hour ($500.50) for the work performed by Kaufman, for a total of $9,267.00. *See* Dkt. No. 131-1 at 3-5.

KeyCorp's Application is supported by the Declaration of Chad D. Cooper and, as proof of the reasonableness of the requested hourly rates, the Declaration of Jacqueline C. Johnson, a shareholder in Dallas at Littler Mendelson, P.C. and KeyCorp's local counsel. *See* Dkt. Nos. 131-1 & 131-2. Johnson opines that the requested rates of $385 for partners and $175 and $205 for associates "are reasonable and within the market range for comparably qualified attorneys practicing in Dallas." Dkt. No. 131-2 at 1-2.

Cooper explains that "KeyCorp's costs and expenses related to the Motion for Sanctions and Mbeteni's violation of the Court's Order (Doc. No. 87) include costs incurred by [BIA], a Computer Forensics, Electronic Discovery and Information Management consulting firm retained by KeyCorp for this lawsuit." Dkt. No. 131-1 at 3. "By way of background, BIA collected electronically-stored information ('ESI') from Mbeteni and Defendant, Allison Holland," and, "[t]o facilitate Mbeteni's production of documents (after they were overdue), BIA agreed to provide hosting and a document review platform for Mbeteni's use." *Id.* "BIA also provided training for Mbeteni's counsel." *Id.*

Cooper asserts that "Mbeteni's failure to complete the BIA-hosted document

review by October 31 (see Doc. No. 87), however, both necessitated KeyCorp's filing of the Motion for Sanctions and caused BIA to incur further cahrges in November related to Mbeteni's tardy document review." *Id.* at 3 (emphasis removed). KeyCorp therefore seeks to recover expenses based on 1.3 hours expended by BIA's Joseph Mosely and Richard Ford at $250.00 an hour ($325.00); 14.1 hours of Relativity document hosting at $35.00 an hour ($493.50); and 3 hours of Relativity user access at $100 an hour ($300.00), for a total of $1,118.50 in expenses incurred by BIA as forensic costs associated with the Sanctions Motion. *See id.* at 5; Dkt. No. 131 at 6.

Cooper's declaration includes a narrative description of the work done by the attorneys and by BIA and the number of hours that it took to complete the work. *See* Dkt. No. 131-1 at 3-5.

"Mbeteni opposes the application for award of attorney's fees because plaintiff padded the bill with duplicated efforts by multiple attorneys for the same task, included services that were wholly unrelated to the motion for sanctions and would have been incurred in the ordinary course of reviewing documents, as well as failure to comply with other requirements under the lodestar method of calculation." Dkt. No. 152 at 1. According to Mbeteni, "KeyCorp requests that the court approve $10,385.00 in fees for the overstaffed services of four (4) lawyers who allegedly spent varied and increasing time periods either in the passive role of an observer or drafting/preparing the same 11-page Motion for Sanctions, proposed order or Reply, including for internal conferences, phone calls and emails and even for services that took place after the Order for Sanctions was granted." *Id.* at 4; *see also id.* at 4-7.

Mbeteni further asserts that "KeyCorp has only provided evidence to support the hourly rate but has failed to produce any evidence in support of reasonableness of the hours billed for the services as required by lode-star." *Id.* at 1. According to Mbeteni, "KeyCorp has failed to exercise any billing judgment in this case and the affidavits of counsel are inadequate, by themselves to meet the evidentiary burden to show billing judgment. There is no evidence of any write off for unproductive, excessive or redundant hours even though KeyCorp bears the burden of proof. As a result, after excluding all duplicated efforts, reducing all block billed hours and striking all unrelated, vague and passive role hours, the court should reduce the hours remaining by 10 to 30 percent as approved by the Fifth Circuit." *Id.* at 16.

And Mbeteni contends that the expenses that BIA incurred were all "Unrelated Post Order 'Expenses' that would have been incurred notwithstanding the Order." *Id.* at 7.

Mbeteni requests that the Court "limit the hours to those actually spent on the Motion for Sanctions and exclude all block billed time periods, duplicative, excessive, passive observer, inadequately documented time records and bills that show lack of billing judgment" and "strike all expenses as naturally occurring from the review and arising after the Order for sanctions was granted because these do not constitute 'costs,'" where "[t]hese expenses would have been incurred notwithstanding the Motion for Sanctions being filed." *Id.* at 8. And, "[i]f the court is inclined to grant an award of any amount of attorneys' fees, Mbeteni humbly requests that the court grant a structured payment plan of $200 per month until paid off as neither he nor his

-23-

attorney have the bulk cash to pay more than $200 per month." *Id.* at 17.

> KeyCorp replies that it
>
> > reviewed its bills and identified only those entries pertaining to Key's Motion for Sanctions. Key explained in its Application how it reasonably staffed and managed the work relating to the Motion for Sanctions, and Key incurred total fees and expenses in the amount of $10,385, including legal fees incurred by Kaufman & Company and forensic consulting expenses incurred by BIA. In the Application, Key presented evidence of the reasonable time expended and of the reasonableness of the hourly rates charged. Mbeteni presents no evidence that Key's efforts in dealing with his abject failure to make discovery should have required less time. And Mbeteni presents no evidence that Key's counsel's rates were excessive. Key's method is in accordance with the lodestar method, and the Court should grant the application in full.

Dkt. No. 153 at 2 (emphasis removed).

Mbeteni does not challenge the reasonableness of KeyCorp's attorneys' requested hourly rates, and the Court finds that the hourly rates of $385.00 for Kaufman and Cooper, $205.00 for Saltz, and $175 for Smoter are reasonable and within the market rate for similar services by attorneys of reasonably comparable skills, experience, and reputation handling this type of litigation in the Dallas area.

The Court now turns to the other lodestar-related matters raised by KeyCorp's Application to which Mbeteni objects.

> B.    Evidence of reasonableness of hours charged and billing judgment

Mbeteni is correct that Cooper and Johnson did not aver, as KeyCorp asserts in its Application, that "the hours charged by Kaufman & Company to prepare the [Sanctions] Motion, review the Opposition to the Motion, draft the Reply, and review the Court's Order granting the Motion were fair and reasonable under the

-24-

circumstances." Dkt. No. 131 at 6; *accord* Dkt. Nos. 131-1 & 131-2.

And, in response to Mbeteni's assertion that KeyCorp presents no evidence of exercising billing judgment, KeyCorp responds only that it "reviewed its bills and identified only those entries pertaining to Key's Motion for Sanctions" and that it "explained in its Application how it reasonably staffed and managed the work relating to the Motion for Sanctions." Dkt. No. 153.

Judge Fitzwater has rejected a similar reply to a similar argument, albeit in a different context:

> For its part, Altec must demonstrate, inter alia, that it exercised billing judgment. ....
> First, in its reply brief, Altec essentially says this: if billing judgment means writing off fees because they are unproductive, excessive, or redundant and therefore would be unreasonable to bill to the client, then the bills sent to the client (Altec) reflect no such fees, and Altec only seeks to recover the fees billed by its attorneys. *See* P. Reply Br. 15 ("Therefore, it is hardly surprising that Altec's fee bills fail to reflect such amounts."). In other words, Altec does not specifically show that its attorneys exercised billing judgment; it just says that the bills it receives are necessarily the product of billing judgment and it is only those fees that it seeks to recover. But at least under federal procedure, the fee applicant must document the hours written off in the exercise of billing judgment. *See, e.g., Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) ("Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."). It is not enough for the fee applicant merely to say that the fees charged by its attorneys necessarily reflect the exercise of billing judgment.
> Second, the one fee entry that Altec explicitly points to as reflecting the exercise of billing judgment is the 9/27/12 entry for 0.4 hours described as "Assemble and transmit Burr & Forman invoices to Southwick." P. App. 131; *see* P. Reply Br. 13-14. But because billing judgment involves writing off fees as unproductive, excessive, or redundant, it is doubtful that this could have been accomplished in 0.4 hours or that the attorney would have described this task as assembling and transmitting invoices.

-25-

> Third, the attorney declarations in the summary judgment record
> do not affirmatively state that any billing judgment was exercised. *See* P.
> App. 70-75; 114-19.

*Altec Capital Servs., LLC v. Weir Bros.*, No. 3:11-CV-3409-D, 2013 WL 866193, at *6-*7

(N.D. Tex. Mar. 8, 2013).

To some extent, provided with adequate narrative descriptions, the Court can judge for itself the reasonableness of hours expended and attorney work undertaken and whether the fees were reasonably incurred in preparing and filing the Sanctions Motion – which is the specific universe of fees caused by Mbeteni's failure to comply with the Court's October 26, 2016 Memorandum Opinion and Order [Dkt. No. 87] that the Court, in its discretion, determined should be awarded under Rule 37(b)(2)(c).

But the Court cannot assess whether KeyCorp's attorneys exercised billing judgment without some evidence, and KeyCorp has not provided any, even in reply. *Contrast Hancock v. Chicago Title Ins. Co.*, No. 3:07-cv-1441-D, 2013 WL 2391500, at *9 (N.D. Tex. June 3, 2013). As courts have in prior cases, the Court determines that 10% reduction in the attorneys' fees requested – after any reductions to specific time entries based on Mbeteni's other objections – is appropriate to account for this omission. *See Saizan*, 448 F.3d at 800; *SCA Promotions, Inc. v. Yahoo! Inc.*, No. 3:14-cv-957-O, 2016 WL 8223206, at *9-*12 (N.D. Tex. Nov. 21, 2016), *rec. accepted*, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017); *Hoffman*, 2015 WL 3999171, at *5.

C.      Alleged block billing

"The term 'block billing' refers to the disfavored time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case,

-26-

rather than itemizing the time expended on specific tasks. Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended. For example, a person engaging in block billing would record the total amount of time spent on a case that day, and then group several tasks under that single entry, leaving the court unable to determine how much time was devoted to a given task." *Hoffman*, 2015 WL 3999171, at *4 n.5 (citations and internal quotation marks omitted). This can make it "impossible to conduct meaningful review and determine the precise number of hours that should be reduced in each time entry due to vague descriptions." *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-cv-913-D, 2005 WL 6789456, at *12 (N.D. Tex. Dec. 20, 2005).

Mbeteni objects to Saltz's time entries on November 7, 8, and 9, 2016 as improper block billing. Saltz billed .20 hours for "[c]orrespondence with Chad Cooper" and another 4.70 hours on November 7 for "[d]etailed review of Motion for Sanctions briefing, including exhibits in support thereof and related Court orders in preparation of Reply in Support of Motion for Sanctions; preparation of initial arguments in response to Mbeteni's Opposition; conference with Chad Cooper; receipt and review of historical correspondence re issues in response to Mbeteni's Opposition to Motion for Sanctions." Dkt. No. 131-1 at 4. Saltz billed 7.10 hours on November 8 for "[p]reparation of Reply in Support of Motion for Sanctions against Mbeteni; conferences with Chad Cooper." *Id.* Saltz then, on November 9, billed .40 hours for "[r]esearch re filing requirements re Motion for Sanctions; correspondence with Chad Cooper";

another 3.90 hours for "[f]urther preparation of Reply in Support of Motion for Sanctions against Mbeteni; conferences with Chad Cooper; preparation of Declaration of Chad Cooper in support of the same; preparation of revised proposed Order"; and another 1.60 hours to "[a]ttend to preparation of exhibits and proposed order in relation to Reply in Support of Motion for Sanctions against Mbeteni; correspondence and conference with Candise Gusman." *Id.* Saltz's block-billed time entries account for 17.70 hours of time at $205.00 an hour, or $3,628.50 of the total $9,267.00 in fees that KeyCorp seeks to recover.

Mbeteni notes that Saltz's block-billed time entry referring to Candise Gusman "does not indicate who she is or the subject matter of his discussion with her." Dkt. No. 152 at 13. In reply, KeyCorp explains that "Ms. Gusman is a paralegal at Kaufman & Company who was involved in the preparation of exhibits to the reply" and asserts that "[n]ot only does the involvement of a paralegal reduce costs, but Key also did not seek reimbursement for her time." Dkt. No. 153 at 7.

KeyCorp protests that the November 7 and November 9 time entries do not meet the definition of "block billing" because Saltz recorded multiple time entries on each of those days. This defense is not well taken – the difficulty is with an attorney's grouping several tasks under that single entry, leaving the Court unable to determine how much time was devoted to a given task. Saltz's November 7, 8, and 9 time entries – other than the first November 7 entry that is limited to a single task – potentially pose this difficulty even though there are multiple time entries for each day.

KeyCorp further replies that these entries do not prevent the Court from

determining the reasonableness of the time expended because they "provide great detail as to the work that counsel performed and enable the Court to determine the reasonableness of the hours expended" and do not require the Court to guess how much time should be allocated to activities pertaining to the Sanctions Motion and how much should be allocated to unrelated tasks." Dkt. No. 153 at 6.

The Court agrees. This is not an instance in which the Court is precluded from determining what part of a block of billed time was spent on legal work related to the Sanctions Motion as opposed to unrelated work or purely administrative tasks, and Mbeteni does not complain about or challenge the amount of time spent to accomplish the listed tasks. *Contrast Merrick v. Scott*, No. 3:10-cv-2172-D, 2011 WL 1938188, at *4 (N.D. Tex. May 20, 2011).

D.     Alleged duplicative billing

Mbeteni also complains that many of KeyCorp's attorneys' time entries reflect duplicative services. The Court finds these objections are, in part, not well-taken for the reasons that KeyCorp explains in reply:

> Mbeteni asserts that Key's Application seeks fees for "duplicate billing" that should be excluded. Mbeteni is wrong. For example, Mbeteni claims that because multiple attorneys participated in the preparation of the reply in support of the Motion for Sanctions, the charges must be duplicative and therefore excluded. Kaufman & Company, like most law firms, staffs its projects to effectively utilize its attorneys' various levels of experience. In this case, Mr. Saltz, an associate, was tasked with preparing the initial draft of the reply. Mr. Cooper, a partner, made revisions and additions to the reply and supporting documents. The work on the reply was divided to save costs by having as much work as possible performed by Mr. Saltz, who bills at a lower rate than Mr. Cooper. Staffing in this manner is appropriate, and Key should not be penalized for having two attorneys collaborate on the reply.

Dkt. No. 153 at 8.

But, "[a]s noted, the court should exclude all time that is duplicative," and "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Wherley v. Schellsmidt*, No. 3:12-cv-0242-D, 2014 WL 3513028, at *3 (N.D. Tex. July 16, 2014). The Court is not persuaded that KeyCorp should recover the time involved in having multiple attorneys review the Court's order granting the Sanctions Motion, even allowing that "Mr. Kaufman, Mr. Cooper, and Mr. Saltz are all counsel of record on this matter who are charged with being knowledgeable of this Court's orders." Dkt. No. 153 at 8.

Indeed, none of that time amounts to "reasonable expenses, including attorneys' fees, that Plaintiff KeyCorp incurred in preparing and filing of its Motion for Sanctions Against Defendant Martin Mbeteni [Dkt. No. 91]." Dkt. No. 103 at 18. Accordingly, the Court will not award any fees for Cooper's time entries on November 10, 2016 ($77.00 for .20 hours at $385.00 an hour) and November 11, 2016 ($231.00 for .60 hours at $385.00 an hour) or Kaufman's time entry on November 10, 2016 ($77.00 for .20 hours at $385.00 an hour) or Saltz's time entry on November 10, 2016 ($102.50 for .50 hours at $205.00 an hour), resulting in a total reduction on this ground of $487.50 in fees.

E.      Allegedly unrelated time entries

Mbeteni also complains about internal conferences among counsel that do not specify the subject matter of the discussion. The Court credits KeyCorp's explanation, as borne out in context and by Cooper's declaration, that the billed conferences in the submitted time entries all related to the Sanctions Motion.

-30-

But the Court finds that, while perhaps reflecting great care, charging Mbeteni's counsel with Saltz's "[r]esearch re filing requirements re Motion for Sanctions" and "correspondence with Chad Cooper" on November 9, 2016, eight days after the Sanctions Motion was filed, is excessive in context. The Court will not award this $82.00 (.40 hours at $205.00 an hour) in fees.

F.    Allegedly billing by "passive observers"

Mbeteni contends that "Steve Kaufman plays the passive behind the scenes role and Mbeteni should not be billed for his passive observer roles as follows: (1) November 1, 2016 'Review of emails between Chad Cooper and Ms. Offoboche re Mbeteni discovery' when he played no part in the preparation of the motion for sanctions. (2) November 1, 2016 unexplained 'Email exchange with Chad Cooper' (3) November 7, 2016 'Review of Mbeteni filings and conference with Chad Cooper' none of which explains the relationship between the conference and the Motion for Sanctions." Dkt. No. 152 at 15.

KeyCorp responds that "Kaufman is the managing partner of Kaufman & Company and has been a practicing trial lawyer and litigator for approximately 40 years"; that, "[c]ontrary to Mbeteni's conclusion that Mr. Kaufman was merely a 'passive observer,' Mr. Kaufman guided strategy regarding the Motion for Sanctions and communicated his strategy input to Mr. Cooper"; and that "Mr. Kaufman's time was proper." Dkt. No. 153 at 9.

The detail in these three time entries is somewhat wanting, but the timing and context, combined with Cooper's declaration explaining that these, along with the other

time entries, "related to the preparation and filing of Plaintiff's Motion for Sanctions," Dkt. No. 131-1 at 3, adequately address these concerns. The Court finds that these fees are properly awarded as "incurred in preparing and filing of its Motion for Sanctions Against Defendant Martin Mbeteni [Dkt. No. 91]." Dkt. No. 103 at 18.

G.   Expenses incurred by BIA in November 2016

The same cannot be said for the expenses, all post-dating the Court's November 10, 2016 Memorandum Opinion and Order [Dkt. No. 103], that KeyCorp seeks to recover for work that BIA did or charges it incurred as forensic consulting expenses. Again, in exercising its discretion in granting the Sanctions Motion and imposing "the least severe sanction adequate to achieve Rule 37(b)(2)'s purposes of reimbursing KeyCorp and deterring violations of the Court's discovery orders," the Court has limited the Rule 37(b)(2)(C) award to requiring that "Defendant Martin Mbeteni's counsel must pay the reasonable expenses, including attorneys' fees, that Plaintiff KeyCorp incurred in preparing and filing of its Motion for Sanctions Against Defendant Martin Mbeteni [Dkt. No. 91]." Dkt. No. 103 at 17-18.

That does not include the "further charges" that KeyCorp contends that Mbeteni's violation of the Court's October 26, 2016 Memorandum Opinion and Order [Dkt. No. 87] "caused BIA to incur ... in November related to Mbeteni's tardy document review." Dkt. No. 131-1 at 3. Accordingly, the Court will not award the requested $1,118.50 in expenses that KeyCorp seeks.

H.   Summary of awarded reasonable expenses, including attorneys' fees

In sum, the Court calculates the lodestar as follows. After disallowing .80 hours

billed by Cooper, .20 hours billed by Kaufman, and .90 hours billed by Saltz, the lodestar amount for the services of KeyCorp's attorneys amount to 2.8 hours at $175.00 an hour ($490.00) for the work performed by Smoter; 17.5 hours at $205.00 an hour ($3,587.50) for the work performed by Saltz; 10.9 hours at $385.00 an hour ($4,196.50) for the work performed by Cooper; and 1.1 hours at $385.00 an hour ($423.50) for the work performed by Kaufman, for a total of $8,697.50. *See* Dkt. No. 131-1 at 3-5. As explained above, the Court will reduce this by 10% for KeyCorp's failure to present evidence of its exercise of billing judgment, for a total lodestar figure of $7,827.75. The Court has considered the *Johnson* factors but notes that the lodestar is presumed to be reasonable and should only be modified in exceptional cases and finds no basis to modify it here.

### Conclusion

The Court GRANTS in part and DENIES in part Plaintiff KeyCorp's Application for Attorneys' Fees [Dkt. No. 131] and ORDERS that Defendant Martin Mbeteni's counsel is required to, by **December 15, 2017**, pay Plaintiff KeyCorp $7,827.75 for its reasonable expenses, including attorneys' fees, incurred in preparing and filing of Plaintiff KeyCorp's Motion for Sanctions Against Defendant Martin Mbeteni [Dkt. No. 91].

SO ORDERED.

DATED: February 15, 2017

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-33-