IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KEYCORP,                     § | |
|  § | |
| Plaintiff,           § | |
|  § | Civil Action No. 3:16-CV-1948-D |
| VS.                          § | *This memorandum opinion and order was filed under seal |
|  § | on July 5, 2017.  This unsealed version is being filed with |
| ALLISON HOLLAND, et al.,     § | the redactions requested by the parties. |
|  § | |
| Defendants.          § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff KeyCorp ("Key") moves to enforce an alleged settlement agreement reached with defendant Allison Holland ("Holland") on November 16, 2016 ("Settlement Agreement"). Holland opposes the motion, contending that the Settlement Agreement does not comply with Tex. R. Civ. P. 11 (hereafter, "Rule 11"), and that it is unenforceable because there was no meeting of the minds on all material terms. For the reasons that follow, the court grants Key's motion to enforce the settlement agreement and denies its request to compel any discovery other than what is required by the terms of the enforced Settlement Agreement.

I

Key is a retail and commercial bank for which Holland worked from August 2009 to July 2015. Prior to her departure from Key to work for Capital One Financial Corporation ("Capital One"), Holland emailed her Outlook Contact List from her work email to her personal email account. After Holland began working at Capital One, she also requested a

quote memo template from a Key employee. The employee emailed Holland at her Capital One account a quote for a completed Key transaction. This quote memo was marked confidential and contained financial information for the transaction, including Key's comments on winning the deal.

As a result of these transactions, Key sued Holland, another former Key employee, and Capital One, alleging trade secret misappropriation and breach of her employment agreement with Key. While the lawsuit was pending, Holland and Key discussed settlement and came to an agreement on many terms, including payment, release of claims, and Holland's obligation to be subject to a "prompt deposition." P. Br. 2. Key simultaneously pursued a preliminary injunction against Holland and the other former Key employee. Key asked for injunctive relief similar to some terms within the alleged Settlement Agreement, including ordering Holland to submit to computer forensic examinations and removal of Key information, extending and enforcing Holland's non-solicitation agreement, and restraining Holland from using or disclosing confidential, proprietary, and trade secret information.

In December 2016 Holland requested "to substitute performance for the 'prompt deposition' term." *Id.* 19. Key maintains that it agreed to substitute performance due to "Holland's fears of submitting to a deposition while Capital One was still in the case." *Id.* The parties allegedly agreed that the "prompt deposition" term "could be performed by: (a) a declaration executed by Holland, (b) comprehensive admissions by Holland, (c) ███████ ████████████████████████, and (d) Key's reservation of rights to take Holland's deposition in the future, if necessary." *Id*; *see* D. Br. 9. Holland provided declarations, but

the admissions remained in negotiations.

On January 24, 2017 the court granted in part and denied in part Key's motion for a preliminary injunction. The court enjoined Holland from using or disclosing Key's confidential, proprietary, and trade secret information, including prospect lists, proprietary analytical tools known as "sizers," proprietary client memoranda and templates, market research, and other confidential and trade secret information, but it otherwise denied Key's motion as to Holland. After the court issued its ruling, Holland sent Key an email stating, "All settlement proposals from Holland are withdrawn. Will be available to discuss alternative terms of resolution terms tomorrow." P. App. 60. Key now moves to enforce the Settlement Agreement allegedly formed on November 16, 2017. Key also requests that the court compel Holland to provide the remainder of the agreed upon "Alternative Discovery," such as the requested admissions, as a substitute for the prompt deposition term. P. Br. 21.

II

"'[A]lthough federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally.'" *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) (quoting *Lee v. Hunt*, 631 F.2d 1171, 1173-74 (5th Cir. Unit A Dec. 1980)); *Borden v. Banacom Mfg. & Mktg., Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988) (Sanders, J). Because Texas law controls this case, Rule 11 also applies. *See Anderegg v. High Standard, Inc.*, 825 F.2d 77, 80 (5th Cir. 1987); *Condit Chem. & Grain Co. v. Helena Chem. Corp.*, 789 F.2d 1101, 1102-03 (5th Cir. 1986).

Rule 11 provides that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."

Because Texas contract law applies to settlement agreements, the agreement must contain all material terms and be "sufficiently definite to enable the court to understand the parties' obligations." *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 323 (5th Cir. 2006) (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831 (Tex. 2000)).  Thus "[w]here an essential term is open for future negotiation, there is no binding contract." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).  "Evidence of the parties' intent to enter into a binding agreement is also required." *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (citing *Premier Oil Refining Co. v. Bates*, 367 S.W.2d 904, 907 (Tex. Civ. App. 1963, writ ref'd n.r.e.)).

Further, a district court can enforce a settlement agreement where the parties have agreed to the materials terms and one party later refuses to execute a formal agreement. *See Weaver v. World Fin. Corp. of Tex.*, 2010 WL 1904561, at *2 (N.D. Tex. May 12, 2010) (Fish, J.) (citing *Daftary v. Metro. Life Ins. Co.*, 136 F.3d 137, 1998 WL 30059, at *1 (5th Cir. Jan. 12, 1998) (per curiam)).  "'Where a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement.'" *Id.* (quoting *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994)).

-

III

The court considers first whether the alleged Settlement Agreement satisfies the requirements of Rule 11, that is, that the agreement must be "in writing, signed and filed with the papers as part of the record."

A

Key posits that the series of emails forming the settlement agreement satisfies the Rule 11 requirements of a written memorandum, with signatures, and filed with the court. Citing two decisions of this court, Key asserts that "[t]he memorandum . . . does not have to take the form of a single document," and that "an email exchange may, provided it meets the other requirements that [the] Court has set out, qualify as a written agreement under Rule 11." *Williamson v. Bank of N.Y. Mellon,,* 947 F.Supp.2d 704, 708 (N.D. Tex. May 16, 2013) (Godbey, J.); *Dymatize Enters. Inc v. Maximum Human Performance, Inc.* 2010 WL 4788573, at *4 (N.D. Tex. Sept. 20, 2010) (Ramirez, J.), *rec. adopted*, 2010 WL 4788571 (N.D. Tex. Nov. 17, 2010) (O'Connor, J.). Relying on the same authorities, Key asserts that "even a simple typed name or automatically-generated signature block in an email constitutes an electronic signature that satisfies Rule 11." P. Br. 16. Regarding the filing requirement, "[b]oth federal and state courts in Texas enforce agreements filed contemporaneously with motions seeking their enforcement." *Williamson*, 947 F.Supp.2d at 712.

B

Holland does not dispute that emails and email signatures can constitute a settlement agreement that satisfies Rule 11. Instead, she maintains that the electronic communication

- 5 -

can only satisfy the Rule "[i]n cases in which an actual, formal written settlement agreement is not contemplated (which is not the case here)." D. Br. 14. She also maintains that "'the series of emails . . . [must be] 'complete within itself in every material detail.'" *Id.* (quoting *Williamson*, 947 F.Supp.2d at 708). Because Holland disputes that the parties came to an agreement on all material terms, she also asserts that the series of emails is not complete within itself in every material detail. Holland also appears to argue that the Settlement Agreement cannot satisfy Rule 11 because the court was never notified that the matter was settled.

C

The court addresses first whether email communications and electronic signatures can satisfy the Rule 11 "in writing" requirement. Because Texas law governs this case and the Texas Supreme Court has not ruled on this specific issue, the court must make an *Erie* guess as to how the court would rule. *See Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) ("In making our *Erie* guess, we look first to those Supreme Court cases that, while not deciding the issues, provide guidance as to how the Texas Supreme Court would decide the question[.]"). In two cases, this court has addressed this question and has held that email exchanges satisfied Rule 11. *See Williamson,* 947 F.Supp.2d at 708; *Dymatize*, 2010 WL 4788571, at \*5. The court follows these decisions in this case.

First, the Supreme Court of Texas has already held that a series of letters can satisfy Rule 11. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Second, the Texas

- 6 -

Uniform Electronic Transactions Act ("TUETA") provides that, "[i]f a law requires a record to be in writing, an electronic record satisfies the law." Tex. Bus. & Com. Code Ann. § 322.0007(c) (West 2015).  Likewise, an electronic signature under the TUETA can be "an electronic, sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *Id.* § 322.002(8).  Third, the Supreme Court of Texas has compared the Rule 11 "in writing" requirement to that of the statute of frauds. *See Padilla*, 907 S.W.2d at 460.  This analysis can extend to signatures. A number of courts have held that "names typed at the end of emails can be signatures under various states' statutes of frauds and enactions of the Uniform Electronic Transactions Act[.]" *Williamson*, 947 F.Supp.2d at 710 (setting out a line of cases that hold that email signature are sufficient to satisfy the statute of frauds).  Thus the court predicts that the Supreme Court of Texas would hold that an electronically signed email exchange is sufficient to establish the writing requirement of Rule 11.  Because each email at issue was signed with counsel's names, either manually typed or electronically signed, the court concludes that the series of emails is "in writing" and "signed" for purposes of Rule 11.

With regard to the time of filing, the Supreme Court of Texas only requires the agreement to be "filed before it is sought to be enforced," and it has held that the filing requirement is met "by filing each of the settlement letters with [a] motion for summary judgment." *Padilla*, 907 S.W.2d at 461.  Here, the record establishes that Key filed the email exchange with its motion to enforce the settlement agreement.  The court finds this simultaneous filing sufficient to satisfy Rule 11. *See id.* ("The purpose of the rule—to avoid

disputes over the terms of oral settlement agreements—is not furthered by requiring the writing to be filed before consent is withdrawn.").

## IV

The court now considers whether Key has established that the parties assented to all material terms.

### A

Key contends that on November 16, 2016 Holland entered into an enforceable settlement agreement that contains all material terms. It posits that the Settlement Agreement developed over the course of three letters: Key's proposal, Holland's counteroffer, and Key's acceptance. In its proposal, Key stated, "for over a week we have been in agreement on all settlement terms, except for a payment term and a non-solicitation term." P. Br. 3. Key proposed three terms: (1) payment (2) non-solicitation, and (3) notice-to-employer. Holland "agreed to each of the three terms *with one exception*: she demanded that Key acquiesce to one last non-solicitation term." *Id.* (emphasis in original; bold font omitted). Key posits that it "fully understood that, if it acquiesced to Holland's last term, then the dispute between them was resolved." *Id.* 4. Key therefore responded to Holland's counteroffer stating, "We believe we now have the material terms in place to form the basis of a settlement agreement," and including in its response the allegedly mutual terms. *Id.* Key asserts that this communication constituted acceptance of Holland's counteroffer, established the material terms of the agreement, and formed an enforceable settlement agreement.

Holland contends that no enforceable settlement agreement was formed. She

- 8 -

highlights that her November 15 counteroffer specifically noted that a revised non-solicitation term was subject to a mutually acceptable definition of solicitation. Because Key eliminated this phrase, replaced it with its own language defining "solicitation," and allegedly proposed "a number of new terms," D. Br. 16, Holland contends no binding agreement was made. Holland also asserts Key knew an agreement had not yet been formed because its response concluded with, "Please advise if we have a final agreement and [we] may begin drafting a formal settlement agreement." *Id.* Key also stated it "it could not include in the formal written settlement agreement all of the substantive changes that Ms. Holland's counsel required" during a November 28 telephone call. *Id.* Holland concludes that because certain definitions and terms were contested, it was clear that neither party could "understand the full extent of Ms. Holland's obligations under the purported settlement agreement," and, as a result, "the material terms of that purported agreement are not 'sufficiently definite to enable the court to understand the parties' obligations.'" *Id.* (quoting *Liberto*, 441 F.3d at 323).

B

The court finds that Key has established that the parties assented to the material terms of the Settlement Agreement. Although the definition of "solicitation" and the language of a few terms were still being negotiated, Key and Holland agreed to the terms of a settlement agreement that are material in Texas: payment and release of claims. *See, e.g., Oliver v. Kroger Co.,* 872 F. Supp 1545, 1548 (N.D. Tex. 1994) (Boyle, J.), *rec. adopted*, 872 F. Supp 1545, 1551 (N.D. Tex. 1994) (Fitzwater, J.) (holding that although letter was not finalized

- 9 -

settlement agreement, letter set forth "the material portions" of payment and the release of all claims); *Padilla*, 907 S.W.2d at 461 (holding that all material terms were present to create a binding agreement when parties agreed on payment and release of claims); *Brooks v. Metiscan Techs., Inc.,* 2009 WL 3087258, at *1 (Tex. App. 2009, no pet.) (holding that "essential terms for a settlement agreement are the amount of compensation and the liability to be released," and citing a line of cases holding the same). That Holland would pay ▋ upon execution of the agreement "in exchange for complete mutual releases" was never contested after November 16, 2016. *See* P. App. 21-23.

Moreover, Holland assented to the terms that the parties allegedly treated as material, including agreement to deposition, testifying, collection of ESI, and the existence of a non-solicitation clause. Although the parties did not agree regarding the definition of "solicitation," they did agree on detailed parameters of the clause, including the duration of time Holland would refrain from soliciting 87 specified companies, with a full carve out of two other companies. Thus because Holland assented to the material terms of the agreement, the court finds that Key established that there was an enforceable settlement agreement between Key and Holland. *See Oliver,* 872 F. Supp at 1548 (enforcing settlement agreement where the writing contained the "general terms" of the settlement).

V

The court now turns to Key's request that the court order Holland to submit to alternative discovery in lieu of a prompt deposition.

A

Key contends that Holland requested "to substitute performance for the 'prompt deposition' term," and that Key agreed to accept, *inter alia*, declarations and admissions in lieu of prompt depositions. P. Br. 19. In December 2016 Key forwarded a draft of the declarations to Holland. When Holland asked what the declarations would be used for, Key explained via email that "the Declaration and Requests for Admissions are what we discussed doing in lieu of a December depositions." *Id.* 20. Key continued to remind Holland that "between the Declaration and the Admissions, the goal is to develop the same discovery we would develop in a deposition. My client was very reluctant to give up the deposition, but we understood that [Holland] would be more comfortable and forthcoming if we delayed the deposition, perhaps indefinitely." *Id.* Further, Key asserts that it "actually performed the substituted performance by (a) deferring Holland's deposition, (b) preparing the Holland declaration, (c) preparing the requests for admission and discussing Holland's concerns with them, and (d) ██████████████████████████████████████████████" *Id.* 21. Key contends it performed "in reliance on the parties' settlement agreement." *Id.* It did "not take Holland's deposition before the submission of Key's PI motion," and it made "no effort to supplement the record as to Key's claims against Holland." *Id.* For these reasons, Key requests the court "find that Holland's commitment to provide alternative discovery in lieu

of a prompt deposition should be enforced for equitable reasons." *Id.* 21.

Holland opposes Key's request to compel her to produce alternate discovery. She asserts that Key's suggestion "that it has somehow been deprived of the ability to develop a record against Ms. Holland for the purpose of its Motion for Preliminary Injunction because of Ms. Holland's purported request for substituted discovery" is without merit. D. Br. 22. Holland contends that Key insisted the substituted discovery was a "pre-condition to continuing final settlement negotiations," and that she provided declarations based on this understanding. *Id.* Holland also maintains that Key could have requested an adjournment of its pending preliminary injunction motion if it believed the case against Holland was settled or if it wanted to obtain Holland's admissions and deposition before the court decided the injunction motion. Holland concludes that her cooperation and Key's delaying the deposition does not entitle Key under the law or in equity to settlement terms it prefers enforced against her.

B

Key appears to contend that the parties agreed to modify the Settlement Agreement by delaying Holland's deposition in exchange for her declarations and admissions. But Key has not demonstrated the elements of a contractual modification, and it instead requests that the court compel Holland's admissions "for equitable reasons." P. Br. 21. Key fails to set out any authority that persuades the court that the Settlement Agreement should be modified or that alternative discovery should be compelled in equity. *See, e.g., Ryan v. Collins*, 496 S.W.2d 205, 209 (Tex. Civ. App. 1973, writ refused n.r.e.) (holding that equitable proceeding

requires allegation that there is no adequate remedy at law). For these reasons, Key's request for discovery outside of the bounds of the November 16 Settlement Agreement is denied.

\* \* \*

For the reasons set forth, the court grants Key's motion to enforce the settlement agreement and denies its request to compel any discovery other than what is required by the terms of the enforced Settlement Agreement.

**SO ORDERED**.

July 5, 2017.

```
_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE
```